UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC PAUL COCKREAM,

        Petitioner,                      Case No. 05-10212
                                                    Honorable David M. Lawson

v.

JOHN PRELESNIK,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Eric Paul Cockream, presently confined at the Thumb Correctional Facility in Lapeer, Michigan, has filed through counsel an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted by a jury in the Macomb County, Michigan circuit court of kidnapping and was sentenced to fifteen to fifty years imprisonment. The petitioner alleges that the prosecutor committed various forms of misconduct, and he was deprived of the effective assistance of trial and appellate counsel. The respondent has filed an answer to the petition, asserting that the claims are procedurally defaulted and lack merit. The Court agrees that petitioner's claims are meritless; therefore the petition will be denied.

I.

The incident giving rise to the conviction was a failed attempt at abducting Michelle Drogosch from the parking lot of her apartment building in Harrison Township, Michigan on August 20, 2000. Drogosch testified at trial that she had parked her car in the lot of her apartment building at 4:00 a.m. and was heading for the door of the apartment complex. As she approached the door, she was grabbed from behind by a man who put one arm around her neck and the other hand over her nose and mouth. The man dragged her about fifty feet toward a white Ford Taurus, which had

the engine running. When her assailant released his grip to open the car door, Drogosch escaped and ran back toward her building, screaming while she ran. Drogosch later identified petitioner as the man who attacked her.

Jonathan Pike, another resident of the apartment complex, testified that he returned to home around 4:00 a.m. and observed a white Ford Taurus with dark tinted windows. When Pike got inside of his apartment, he heard screams and went to the window. Pike opened the window and yelled. He said the white Taurus then "went flying." Trial Tr., Vol II, 135. Pike and his girlfriend then went to the front door to let the victim into the building. Pike described the victim as being "scared out of her mind." *Id.* at 138.

Lieutenant Ray Richard of the Macomb County Sheriff Department testified that he interviewed the petitioner subsequent to his arrest. The petitioner at first denied being in the victim's apartment parking lot, but later admitted being there. However, the petitioner told Lieutenant Richard that he had pulled into the lot to snort a line of cocaine and never got out of his car.

Detective Gary Paolella arranged a lineup, at which the victim identified the petitioner as her assailant.

The petitioner filed a direct appeal raising issues of sufficiency of evidence on a critical element of kidnaping, improper jury instructions, and a disproportionate sentence. The state appellate courts affirmed the conviction and sentence. *People v. Cockream,* No. 235560, 2003 WL 356367 (Mich. Ct. App. February 14, 2003), *lv. den.* 469 Mich. 864, 666 N.W.2d 669 (2003). The petitioner thereafter filed a post-conviction motion for relief from judgment alleging the issues raised in the present habeas petition, namely, misconduct by the trial prosecutor and ineffective assistance

of trial and apellate counsel. The state trial court denied relief, *People v. Cockream,* No. 2000-3533-FC (Macomb County Circuit Court, December 3, 2003), and the Michigan appellate courts denied petitioner leave to appeal. *People v. Cockream*, No. 252953 (Mich. Ct. App. July 9, 2004), *lv. den.* 471 Mich. 953, 690 N.W.2d 106 (2004).

The petitioner now seeks the issuance of a writ of habeas corpus on the following grounds, as he frames them:

> I. Petitioner's application for a writ of habeas corpus should be granted because the judgment of the state court on the issue of prosecutorial misconduct involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.
>
> II. Petitioner's application for a writ of habeas corpus should be granted because the judgment of the state court on the issue of ineffective assistance of trial counsel involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.
>
> III. Petitioner's application for a writ of habeas corpus should be granted because the judgment of the state court on the issue of ineffective assistance of appellate counsel involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially

indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner argues that he is entitled to habeas corpus relief based upon multiple instances of prosecutorial misconduct because the prosecutor: (1) vouched for the credibility of the victim and another witness; (2) commented on the petitioner's failure to testify; (3) attempted to shift the burden of proof to the petitioner at trial; (4) appealed to the jurors' sympathy; and (5) made an illegal "civic duty" argument.

The respondent contends that the petitioner's prosecutorial misconduct claims are procedurally defaulted because his attorney failed to object to the prosecutor's conduct at trial or on direct appeal and the issue was not raised until post-conviction collateral proceedings.

The Supreme Court has described doctrine of procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Although the procedural default doctrine precludes habeas relief on a defaulted claim absent satisfaction of the cause-and-prejudice test, the doctrine is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Therefore, although the Court would ordinarily resolve the procedural default issue first, "judicial economy sometimes dictates reaching the merits [of a claim] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). The petitioner contends that ineffective assistance of counsel is the cause for not raising these issues sooner. Indeed, ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002). In fact, a "claim of ineffective assistance of counsel . . . can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim." *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). But that issue will be addressed below and need not delay the resolution of the

prosecutorial misconduct claim. The Court deems it more efficient in this case to proceed directly to the merits of that issue.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). "The Court must examine 'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

First, the petitioner claims that the prosecutor improperly vouched for the credibility of his witnesses. It appears that the state prosecutor made remarks in his opening and closing statements about how "nice" Ms. Drogosch was and that she was telling the truth, although he also referred to her as "incredible." During his opening statement, the prosecutor remarked:

> Now, what you're going to hear you're going to listen to Michele and you're going to see what an incredible nice young girl she is and she is not making this up.

Trial Tr., Vol II, 79. He further noted:

> You're going to listen to her, you're going to observe her, you're going to gage [sic] her credibility and she's going to tell you what happened.

*Id.* at 79. Later in the opening statement, the prosecutor stated:

> My argument is even if we didn't have all that stuff, you believe it just on the victim's testimony herself. . . . But we are going to have a lot more [evidence] than that.

*Id.* at 80.

In his closing argument, the prosecutor commented, "You heard the testimony from a wonderfully [sic] girl," and, "This is a wonderful girl this happened to. We've talked about how you would gauge somebody's credibility." Trial Tr., Vol III, 27. The petitioner also complains about the prosecutor's comments describing Drogosch as a "nice girl" who was trying to minimize what happened to her. *Id.* at 30.

The petitioner claims that the prosecutor improperly bolstered the testimony of Jonathan Pike when he stated, "I think the best witness we had here was the other guy who lived at that complex." *Ibid.*

The first question to consider is whether the prosecutor's remarks during his statements to the jury were improper. *See Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must consider whether the improper conduct was so flagrant as to warrant reversal. *Id.* at 516. The Sixth Circuit has identified four factors to consider when analyzing conduct for flagrancy: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were said deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (internal quotes omitted).

The Court does not find that the prosecutor improperly vouched for the credibility of the State's witnesses. "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993). Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992), or when the

prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby placing the prestige of the prosecutor's office behind the witness, *see United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999). The test for improper vouching is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "Generally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Francis,* 170 F.3d at 550 (internal citations omitted).

In this case, it appears that the prosecutor was urging the jury to find that the victim was as nice as he found her to be. The argument was not very professional or even logical – no one has ever established, for example, that nice people do not lie. But the argument was not improper, either. When viewed in context, the prosecutor's comments were based on the record evidence (the jury presumably could see how "nice" the victim was while testifying) and not on his personal belief concerning the evidence. The prosecutor did not assert or imply that he had any special knowledge apart from the record evidence to believe that petitioner was guilty or the prosecution witnesses were testifying truthfully.

In addition, the trial court instructed the jury before opening statements and after closing arguments that the lawyers' statements and arguments were not evidence. The trial court also gave a standard instruction on the factors that they should use to evaluate the credibility of the witnesses. Those instructions served to enforce the jury's duty to exercise their own judgment in determining witness credibility. The prosecutor's comments about the witnesses did not deprive the petitioner of a fair trial. *See Byrd v. Collins,* 209 F.3d 486, 537-38 (6th Cir. 2000).

The petitioner next contends that the prosecutor improperly commented on the petitioner's right to remain silent when he stated that "there's no contradiction to what [the victim] said." [cite to record]. "It is well established that a prosecutor's direct reference to a criminal defendant's failure to testify is a violation of that defendant's Fifth Amendment privilege against compelled self-incrimination." *Byrd*, 209 F.3d at 533 (citing *Griffin v. California*, 380 U.S. 609 (1965)). The petitioner does not contend here that the prosecutor made a direct reference to the fact that the petitioner did testify at trial. However, indirect references to a defendant's failure to testify may also violate the Fifth Amendment privilege. *Ibid.* "'[A] reviewing court must look at all the surrounding circumstances in determining whether or not there has been a constitutional violation.'" *Ibid.* (quoting *Butler v. Rose*, 686 F.2d 1163, 1170 (6th Cir. 1982) (en banc)). The Court cannot find that the prosecutor's conduct in this case amounted to an indirect comment on the petitioner's silence.

The Sixth Circuit has prescribed four factors to consider when assessing a claim of indirect comment on the right to silence: "1) Were the comments 'manifestly intended' to reflect on the accused's silence or of such a character that the jury would 'naturally and necessarily' take them as such; 2) were the remarks isolated or extensive; 3) was the evidence of guilt otherwise overwhelming; 4) what curative instructions were given and when." *Bowling v. Parker*, 344 F.3d 487, 514 (6th Cir. 2003) (quoting *Lent v. Wells*, 861 F.2d 972, 975 (6th Cir. 1988)). In reviewing indirect comments touching on a defendant's failure to testify, a court will not find a manifest intent to comment on the right to remain silent if some other explanation for the prosecutor's remarks is equally plausible, such as when a comment is a fair response to a claim made by the defendant or his counsel. *See Gall v. Parker,* 231 F.3d 265, 311 (6th Cir. 2000). The Sixth Circuit also has held that "'[g]eneral references to evidence as uncontradicted, while not recommended, may not reflect

on the defendant's failure to testify where witnesses other than the defendant could have contradicted the evidence.'" *Byrd*, 209 F.3d at 534 (quoting *Raper v. Mintzes*, 706 F.2d 161, 164 (6th Cir. 1983)); *see also Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006).

In the present case, there were witnesses other than the petitioner who could have called into question the victim's version of the events, namely, Jonathan Pike. Therefore, the prosecutor's comment was not unequivocally referable to the petitioner's silence, and the jury would not have taken it as such. The remark was isolated. The evidence of guilt was strong. And the trial court properly instructed the jury about the petitioner's right not to testify. The prosecutor's comment did not abridge the petitioner's right to silence.

The petitioner argues in the alternative that the prosecutor's remark impermissibly shifted the burden of proof from the prosecution to the petitioner. That is unlikely. The trial judge instructed the jury both at the beginning and the end of trial that the petitioner was presumed innocent and that the prosecutor had the burden of proving the petitioner's guilt beyond a reasonable doubt. The trial court also gave the jurors the standard jury instruction defining reasonable doubt. If the prosecutor's comment confused the jury on these basic tenets, any possible prejudice which might have resulted was cured by the trial court's instructions on the proper burden of proof. *See Scott v. Elo,* 302 F.3d 598, 603-04 (6th Cir. 2002).

The petitioner next contends that the prosecutor improperly appealed to the sympathy of the jurors with several of his remarks. For instance, he referred to the victim's ordeal several times as a "nightmare." He also stated that no one deserved to have this happen to them and that the incident ended only "By the grace of God." The petitioner also refers to comments made by the prosecutor, in which he inexplicably worried about the safety of his own mother when she went out at night.

The Court is at a loss to understand how any competent prosecutor could believe that such comments were proper in a criminal trial. The defense was not that the victim was making up the story of the attempted abduction, but rather that the petitioner did not do it. No one ever questioned the traumatic effect upon a young woman of being plucked from her apartment's parking lot late at night by a stranger bent on mischief. But that did not advance the inquiry about the genuinely contested issues at trial.

But although these comments by the prosecutor were improper, they did not so infect the entire trial in a manner that would entitle the petitioner to relief. *See Rodriguez v. Peters*, 63 F.3d 546, 565 (7th Cir. 1995) (holding that victim impact comments comprising one of thirty-five pages of a closing argument did not render trial unfair). It is likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000). So even though the statements by the prosecutor invoking sympathy for the victim were improper, they do not meet the stringent standard necessary for avoiding a conviction on habeas appeal. The remarks were relatively isolated, not extensive, and only a small part of opening statement and closing argument focused on the emotional burden created by the memory of the victim's near miss. The balance of the argument concentrated heavily on summarizing the evidence that would be presented or was presented at trial. *See Byrd*, 209 F.3d at 532. When combined with the instruction from the trial judge that the attorneys' statements were not evidence, the prosecutor's comments did not render the entire trial fundamentally unfair. *Id.* at 533. The Court notes that the trial court also instructed the jury that they were not to let sympathy or prejudice influence their decision. *Id.* at 537; *see also Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999).

The petitioner also suggests that the prosecutor engaged in an improper "civic duty" argument by making these remarks. The Sixth Circuit has noted that civic or societal duty arguments are improper, but they do not warrant relief "[u]nless calculated to incite the passions and prejudices of the jurors." *Byrd,* 209 F.3d at 539 (quoting *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)). Moreover, "appeals to the jury to act as the community conscience are not *per se* impermissible." *Ibid.* In this case, the prosecutor's "less than-pointed-remarks" likely did not incite prejudice in the jury.

The Court finds that the petitioner has failed to show that the prosecutor's arguments were so egregious as to deprive him of a fair trial. The petitioner therefore is not entitled to habeas relief on his first claim.

B.

The Court next claims that he suffered the ineffective assistance of both trial and appellate counsel. The Court will examine those claims together.

The respondent contends that these claims are barred by the doctrine of procedural default because the petitioner did not raise them until his post-conviction motion. Ineffective assistance of appellate counsel claims plainly cannot be raised on direct appeal as they do not arise before the appeal. *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004) ("Petitioner did not procedurally default his claim of ineffective assistance of appellate counsel. State collateral review was the first opportunity that petitioner had to raise this claim."). The petitioner raised his ineffective assistance of appellate counsel claims at his first opportunity to do so, in his motion for relief from judgment. *See Tucker v. Renico*, 317 F. Supp. 2d 766, 772-73 (E.D. Mich. 2004). Moreover, post-conviction motions are more suitable for addressing claims of ineffective assistance of trial counsel. *See United*

*States v. Barrow*,118 F.3d 482, 494 (6th Cir. 1997) (noting that in the federal forum, "'[t]he more preferable route for raising an ineffective assistance of counsel claim is in a post-conviction proceeding under 28 U.S.C. § 2255,' whereby the parties can develop an adequate record") (quoting *United States v. Carr*, 5 F.3d 986, 993 (6th Cir. 1993)). In this case, the petitioner raised the claims of ineffective assistance of trial and appellate counsel in state post-conviction proceedings analogous to the procedure set out in section 2255.

The two-prong test set forth in *Strickland v. Washington* governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

The petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's improper arguments. Perhaps, but the Court need not determine whether trial counsel's performance was substandard because the petitioner is unable to establish that he suffered prejudice as a result of his attorney's performance, which is fatal to his ineffective assistance claim. *See Strickland*, 466 U.S. at 697 (stating that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"); *Doughty v. Grayson*, 397 F. Supp. 2d 867, 882 (E.D. Mich. 2005). To show prejudice under *Strickland*, the petitioner must show that his trial counsel's failure to object to the prosecutor's improper questions and arguments establishes a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). But this Court has determined already that the prosecutor's conduct did not undermine confidence in the outcome of the trial, and therefore counsel's failure to object to the prosecutor's comments could not have been prejudicial. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

The petitioner also contends his appellate counsel was ineffective for failing to raise the prosecutor misconduct and ineffective assistance of trial counsel issues on direct appeal. To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. A court evaluating a claim of ineffective assistance of appellate

counsel should consider several factors to determine whether counsel's performance fell below an objective standard of reasonableness, including the eleven enumerated factors set forth in *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999); *see also Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006). Appellate counsel need not raise every nonfrivolous argument on direct appeal, but she must exercise reasonable professional judgment. *Joshua v. DeWitt*, 341 F.3d 430, 441, (6th Cir. 2003) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). When ignored issues are clearly stronger than those presented, the presumption of effective assistance of appellate counsel is overcome. *Ibid.* A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal.

The Supreme Court has held that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Ibid.* Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The Court has already concluded that the petitioner's first and second claims lack merit. Because those claims would not result in relief for the petitioner, he is unable to show that appellate counsel's failure to raise them on direct appeal was deficient performance or prejudicial. The petitioner therefore is not entitled to habeas relief on his ineffective assistance of counsel claims.

III.

For the foregoing reasons, the Court finds that the petitioner has not shown that he is in custody in violation of the Constitution of the laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dk#1] is **DENIED.**

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: July 24, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 24, 2008.

s/Felicia M. Moses  
FELICIA M. MOSES